**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**JOSE M. CHARRIEZ,**

       **Plaintiff,**

**vs.**                             **Case No. 4:11cv379-SPM/CAS**

**MARK GARCIA, et al.,**

       **Defendants.**

_____/


**<u>SECOND REPORT AND RECOMMENDATION</u>**[1]

      Plaintiff, a pro se state prisoner, was given leave, doc. 35, to file a second

amended complaint, doc. 34, alleging due process and First Amendment claims.

Defendants filed a motion to dismiss Plaintiff's second amended complaint for failure to

state a claim.  Doc. 39.  Plaintiff was directed to file a response in opposition to the

motion to dismiss, doc. 42, and Plaintiff has filed his response in opposition.  Doc. 45.  It

is concluded that Plaintiff failed to state a claim against Defendants Bannister and Stine

and the motion to dismiss should be granted as to those Defendants, but otherwise

denied as to the claim against Defendant Garcia.

_____

      [1] The first report and recommendation entered in this case concerned Plaintiff's
motion for a restraining order, doc. 12, which was denied.  Docs. 16, 24.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009), *quoting* Twombly, 550 U.S. at 570, 127 S.Ct. 1955.[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949, *citing* Twombly, 550 at 556; *see also* Speaker v. United States Dep't of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949, *quoting* Twombly, 550 at 556. A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 S.Ct. at 1949, *quoting* Twombly, 550 at 557.

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the

---

[2] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, *quoting* Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

grounds upon which it rests.  <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.").  Pro se complaints are held to less stringent standards than those drafted by an attorney.  <u>Wright v. Newsome</u>, 795 F.2d 964, 967 (11th Cir. 1986), *citing* <u>Haines v. Kerner</u>, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).  "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is . . . 'exceedingly low.' "  <u>Ancata v. Prison Health Serv., Inc.</u>, 769 F.2d 700, 703 (11th Cir. 1985), *quoting* <u>Quality Foods de Centro America, S.A. v. America Agribusiness Dev.</u>, 711 F.2d 989, 995 (11th Cir. 1983).  Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ."  <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), *quoted in* <u>Twombly</u>, 127 S.Ct. at 1966.  A complaint does not need detailed factual allegations to survive a motion to dismiss, but it must provide the grounds for a plaintiff's entitlement to relief beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ."  <u>Twombly</u>, 127 S.Ct. at 1964-65.

> If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding.  Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56.

<u>Swierkiewicz</u>, 122 S.Ct. at 998-999.

In reviewing a motion to dismiss based on qualified immunity, the Court must accept "the facts alleged in the complaint as true, drawing all reasonable inferences in

the plaintiff's favor, and limiting [ ] review to the four corners of the complaint." St.

George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002) (citations omitted),

*quoted in* Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010).  The Supreme

Court has stated that because this privilege is "immunity from suit" and not "a mere

defense to liability," it should be resolved "at the "earliest possible stage in litigation."

Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991), *quoted in*

Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

The Court in Saucier mandated a two step analysis for resolving qualified

immunity issue.  533 U.S. at 201, 121 S.Ct. at 2156.  First, a court must decide whether

a plaintiff alleged facts which "make out a violation of a constitutional right" and, if so,

then the "court must decide whether the right at issue was 'clearly established' at the

time of defendant's alleged misconduct."  Pearson v. Callahan, 555 U.S. 223, 232, 129

S.Ct. 808, 815-816 (2009), *quoting* Saucier, 533 U.S. at 201.  While Saucier mandated

that sequence, the Supreme Court concluded in Pearson, 129 S.Ct. 808, 818 (2009)

that the process "should no longer be regarded as mandatory."  Judges "should be

permitted to exercise their sound discretion in deciding which of the two prongs of the

qualified immunity analysis should be addressed first in light of the circumstances in the

particular case at hand."  129 S.Ct. at 818.

**Plaintiff's Second Amended Complaint, doc. 34**

Plaintiff alleged that as a result of a monitored telephone call from another

inmate, prison officials from the Department of Corrections learned that the inmate

requested his mother to deposit money into Plaintiff's inmate bank account.  Doc. 34 at

5.  During the ensuing investigation,[3] Plaintiff alleged that Defendant Garcia "used

intimidation and threats to gain entry into plaintiff's parents' residence" to interrogate

them.  *Id.*  Plaintiff alleges that his parents spoke with Defendant Garcia because of

their "mistaken impression that Garcia was in some official capacity representing the

Springhill Police Department or Hernando County Sheriff."  *Id.*  Defendant Garcia then

allegedly persuaded the Institutional Classification Team (hereinafter ICT) to suspend

Plaintiff's visitation privileges.  *Id.*  Plaintiff alleges the suspension was imposed without

prior notice to him and without an opportunity to be heard.  *Id.*  Plaintiff was informed of

the suspension by Defendant Bannister, and upheld when Defendant Bannister denied

Plaintiff's grievance and at the appeal level by Defendant Stine.  *Id.* at 6.  Plaintiff

contends that no Department of Corrections' Rule specifically prohibits one prisoner's

family from receiving money from another prisoner's family.  *Id.* at 6.

Plaintiff asserted claims for the denial of his substantive and procedural due

process rights and his First Amended rights.  *Id.* at 10.  Plaintiff seeks a declaratory

judgment, injunctive relief, and nominal damages of $100.00.  *Id.* at 10-11.

**Defendants' motion to dismiss, doc. 39**

Defendants assert that Plaintiff fails to state a due process claim because he is

unable to demonstrate "that he had a due process liberty or property interest which

would give rise to the protections of the Due Process Clause."  Doc. 39 at 5.  Moreover,

Plaintiff's claim against Defendant Garcia is insufficient because, by Plaintiff's own

admission, the ICT suspended Plaintiff's visitation privileges, not Garcia.  *Id.* at 9.

---

[3] While Plaintiff acknowledges there was an "investigation," he contends that he
did not receive a disciplinary report or have a disciplinary hearing.

Defendants further claim that Plaintiff cannot state a claim against Defendants Bannister and Stine for denying his grievances. *Id.* at 7-9. Defendants contend that prior case law establishes that the Department may suspend Plaintiff's visitation rights without violating Plaintiff's constitutional rights. *Id.* at 11-14. Defendants raise qualified immunity as a defense, *Id.* at 14-18, assert that Plaintiff cannot recover punitive damages, *Id.* at 18-20, and argue that Plaintiff is not entitled to injunctive relief.

**Plaintiff's Response, doc. 45**

Plaintiff notes that the request to dismiss claims for punitive damages is not well taken because Plaintiff did not request punitive damages. *Id.* at 1. Plaintiff further states that Defendants have misconstrued his complaint as he is not bringing a separate due process claim, but cites the Due Process Clause as protecting his First Amendment right to intimate association. *Id.* at 2. Plaintiff also argues that the complaint does not allege a due process right to the prison grievance process, but he established the Defendants' personal involvement by their "failure to rectify the violations" when Plaintiff utilized the grievance process. *Id.* at 3. Plaintiff states that "it is not the 'mere denial of administrative grievances,' . . . upon which Plaintiff premises" liability against Defendants Bannister and Stine, but because they failed to ensure that the requirements of due process were met.[4] *Id.* at 3-4. Plaintiff contends that he has a right to intimate association that is, admittedly, limited, but which is also protected by due process. *Id.* at 4-5. Plaintiff contends there has been "ample federal law" since 1974 which gave "fair warning to the defendants that" their actions were unconstitutional

---

[4] Plaintiff argues that the appeal documents Plaintiff submitted to them "exhibited facial due process violations of which they should have been aware." *Id.* at 4.

and the qualified immunity defense should be denied.  *Id.* at 8.  Finally, Plaintiff disputes

that his request for nominal damages is too great, and contends he is still entitled to

injunctive relief.  *Id.* at 8-9.

**Analysis**

**Defendants Bannister and Stine**

Defendants Bannister and Stine argue that Plaintiff alleged a claim against them

for "failing to grant Plaintiff's administrative grievances and reverse the suspension of

his visitation privileges."  Doc. 39 at 7.  Plaintiff attempts to clarify his claim and

contends that Defendants Bannister and Stine are sued because they failed to rectify

the violations of Plaintiff's constitutional rights which they were provided notice of by

Plaintiff's grievances.  Doc. 45 at 3.  Plaintiff asserts that once Defendants were put on

notice through the grievance process of the alleged constitutional violations, they sat in

a position to correct the violation, but failed to do so.

There is ample case law on this point to grant the motion to dismiss.  "Isolated

incidents are generally insufficient to establish a supervisor's liability, and filing a

grievance with a supervisory person[5] does not alone make the supervisor liable for the

allegedly violative conduct brought to light by the grievance, even if the grievance is

denied."  Owens v. Leavins, 5:05cv228, 2006 WL 2640275, at *4 (N.D. Fla. Sept. 13,

2006); Holmes v. Correction Corp. of America, 2011 WL 3490086, at *1 (S.D. Ga. Aug.

9, 2011); Tariq v. Chatman, 2012 WL 3626827, at *1 (M.D. Ga. Aug. 22, 2012).  For

---

[5] "It is well established in this circuit that supervisory officials are not liable under
§ 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat
superior or vicarious liability.' "  Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir.
1994), *quoted in* Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999).

supervisory liability to exist under § 1983, a plaintiff must allege either personal participation by the supervisor or "a causal connection existed between the actions of the supervising officials and the alleged constitutional deprivation." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (describing instances when a supervisor can be held liable under § 1983). Because Defendants Bannister and Stine did not participate in the alleged Constitutional violation (suspension of visitation) and there is no causal connection between them and the actions of Defendant Garcia, nor a history of widespread abuse, *see* Clark v. Evans, 840 F.2d 876, 885 (11th Cir. 1988); Brown v. Crawford, 906 F.2d 667, 671 (11th Cir.1990); Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007), the motion to dismiss, doc. 39, must be granted as to Defendants Bannister and Stine.

### Failure to state a claim

Defendants argue that Plaintiff has failed to state a claim under the Due Process Clause and has no liberty interest in either the grievance process or in his visiting privileges. Doc. 39 at 5-11. In the second amended complaint, Plaintiff alleged that he "has a liberty interest in the retained limited First Amendment right to intimate association through prison visitation." Doc. 34 at 6. Plaintiff alleged that both the Florida Administrative Code and Florida Statutes "not only authorize but encourage prison visitation." *Id.* Plaintiff alleged that no prison rule prohibited his conduct for which his visitation privileges were suspended. *Id.* "Nonetheless, the plaintiff is not proposing that he has a state created liberty interest in prison visitation." *Id.* at 9. Plaintiff alleged that he was relying upon the "liberty interest identified in" Overton v. Bazzetta, 539 U.S. 126, 123 S.Ct. 2162 (2003). Plaintiff also asserted in his response,

doc. 45, that he is not arguing that he "has a state created liberty interest in prison visitation. . . ." *Id.* at 2. Plaintiff argues that his "First Amendment right is clearly protected by due process by the wording of the Due Process Clause itself that no person should be deprived of liberty or property without due process of law." *Id.*

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives "any person of life, liberty, or property, without due process of law ." U.S. Const. amend. XIV. To allege a violation of one's due process rights, a plaintiff must establish that he was deprived of an interest cognizable under the Due Process Clause, and that the procedures attendant upon that deprivation were not constitutionally sufficient. Kentucky v. Dep't of Corr. v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506. 459-60, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); Board of Regents v. Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "Due process entitles an individual to notice and some form of hearing before state action may finally deprive him or her of a property interest" or liberty interest. Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994), *citing* Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 901-902, 47 L.Ed.2d 18 (1976). Plaintiff alleged he was not given notice and did not receive a hearing where he was provided an opportunity to be heard. Plaintiff adequately alleged a due process claim.

In Overton, the Supreme Court considered whether certain Michigan prison regulations violated the "due process mandate of the Fourteenth Amendment, or the First or Eighth Amendments as applicable to the States through the Fourteenth Amendment." 539 U.S. at 128, 123 S.Ct. at 2165-166. One regulation provided that inmates "who commit multiple substance-abuse violations" were not permitted "to

receive any visitors except attorneys and members of the clergy," although an inmate subject to that restriction could apply for reinstatement of visitation privileges after two years, subject to the warden's discretion.  *Id.* at 130, 123 S.Ct. at 2166.  Other restrictions on visitation were imposed in the regulations and a challenge was brought pursuant to § 1983 by the "prisoners, their friends, and their family members," alleging violations under the First, Eighth, and Fourteenth Amendments.  *Id.* at 129-30, 123 S.Ct. at 2166.

At the outset, the Court noted that "outside the prison context," there has been discussion of "a right to maintain certain familial relationships, including association among members of an immediate family and association between grandchildren and grandparents."  539 U.S. at 131, 123 S.Ct. at 2167.  In the prison context, however, a prisoner retains those rights which are not inconsistent with his incarceration.  *Id., citing* Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); Shaw v. Murphy, 532 U.S. 223, 229, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001).  The Court found that "freedom of association is among the rights least compatible with incarceration" and "[s]ome curtailment of that freedom must be expected in the prison context."  *Id.*, at 131, 123 S.Ct. at 2167 (other citations omitted). The Court ultimately concluded that it "need not attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration because the challenged regulations[6] bear a rational relation to legitimate penological interests."  Overton, at 131-32, 123 S.Ct. at 2167, *citing* Turner v. Safley,

---

[6] The specific regulation under consideration at that point was the restrictions on non-contact visits.

482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). As to the two-year restriction

on visits for inmates with two substance-abuse violations, the Court found it "serve[d]

the legitimate goal of deterring the use of drugs and alcohol within the prisons." 539

U.S. at 134, 123 S.Ct. at 2168. The Court did, however, find the restriction[7] and the

discretionary reinstatement provision "severe," and commented that *if* there was a

"permanent ban on all visitation for certain inmates," a different conclusion might be

reached. *Id.* at 134, 123 S.Ct. at 2169. The Court's opinion concluded with this

guidance and limitation:

> If the withdrawal of all visitation privileges were permanent or for a much longer
> period, or if it were applied in an arbitrary manner to a particular inmate, the case
> would present different considerations. An individual claim based on indefinite
> withdrawal of visitation or denial of procedural safeguards, however, would not
> support the ruling of the Court of Appeals that the entire regulation is invalid.

*Id.* at 134, 123 S.Ct. at 2169. The Court stated explicitly that no ruling was made, and

no implication was intended, "that any right to intimate association is altogether

terminated by incarceration or is always irrelevant to claims made by prisoners." *Id.* at

131, 123 S.Ct. at 2167 (reiterating that "substantial deference" must be given "to the

professional judgment of prison administrators, who bear a significant responsibility for

defining the legitimate goals of a corrections system and for determining the most

appropriate means to accomplish them."). Accordingly, the Court's opinion in Overton,

considered alongside Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64

(1987), stand for the basic proposition that "imprisonment does not automatically

deprive a prisoner of certain important constitutional protections, including those of the

---

[7] The Court also rejected the argument that a two-year ban on visitation for inmates with two substance-abuse violations was a "cruel and unusual condition of confinement in violation of the Eighth Amendment." *Id.* at 136, 123 S.Ct. at 2170.

First Amendment." <u>Beard v. Banks</u>, 548 U.S. 521, 528, 126 S.Ct. 2572, 2577 (2006). The First Amendment is implicated when visitation privileges are withdrawn, and the Supreme Court noted the "importance of" such a right. <u>Beard</u>, 548 U.S. at 533, 126 S.Ct. at 2580.

The claims raised by Plaintiff in his second amended complaint fall within the limitation of <u>Overton</u>. <i>Id.</i> at 134, 123 S.Ct. at 2169. Plaintiff alleged that when his visitation privilege was revoked, he was not given "prior notice," he was never charged with a prison rule infraction, never given an "opportunity to be heard," and he alleged his conduct is not specifically prohibited by Department rules.[8] Doc. 34 at 5-6, 10. Viewed liberally, as the Court must do on a motion to dismiss, Plaintiff has alleged that he has a protected right under the First Amendment as provided for in <u>Overton</u>, whose importance is recognized in <u>Beard</u>, and the withdrawal of an inmate's visitation privileges if "applied in an arbitrary manner" and without procedural safeguards states a claim under the First Amendment. Because Plaintiff adequately alleged a liberty interest under the First Amendment that is entitled to protection by the Due Process Clause. The motion to dismiss for failure to state a claim should be denied as to Defendant Garcia.

---

[8] As for Defendants' argument that "<u>Caraballo-Sandoval</u> found there was no liberty interest at issue in a case where a prisoner's visitation privileges with his wife were terminated" doc. 39, at 13, that argument is rejected. In <u>Caraballo-Sandoval</u>, 35 F.3d 521 (11th Cir. 1994), the Eleventh Circuit rejected the argument "that the visitation regulations contain mandatory language that substantially limits the prison officials' discretion, thereby creating a liberty interest in visitation." 35 F.3d at 525. Plaintiff has clarified that he does not base his claim upon prison regulations but upon the First Amendment. Additionally, <u>Caraballo-Sandoval</u> is inapplicable because prior to suspending Caraballo-Sandoval's visitation privileges, he was issued a disciplinary report and, presumably, had an opportunity to be heard.

**Qualified Immunity**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), *quoted in* Pearson, 555 U.S. at 231, 129 S.Ct. at 815. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." 555 U.S. at 231, 129 S.Ct. at 815. The purpose of qualified "immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citation omitted). "[O]fficials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages . . ." Gonzalez v. Lee Cnty. Hous. Auth., 161 F.3d 1290, 1303 (11th Cir. 1998), *quoting* Davis v. Scherer, 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984).

"[T]o show that the constitutional violation was clearly established, [Plaintiff] must demonstrate (1) 'that a materially similar case has already been decided, giving notice to the police;' (2) 'that a broader, clearly established principle should control the novel facts in this situation;' or (3) 'this case fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary.' " Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005) (citations omitted), *quoted in*

Keating v. City of Miami, 598 F.3d 753, 766 (11th Cir. 2010) (finding rights were clearly established under the second Mercado category).  Plaintiff argues that Overton provides clearly established law such that Defendants are not entitled to qualified immunity.  Doc. 45 at 7-8.

It is well settled that prisoners do not forfeit all First Amendment rights upon incarceration.  Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861 (1979).  In Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800 (1974), the Supreme Court recognized that inmates have First Amendment rights, although they may be limited, and those rights are deemed to be liberty interests which are protected from arbitrary intrusion:

> The interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a "liberty" interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment.  As such, it is protected from arbitrary governmental invasion.

416 U.S. at 418, 94 S.Ct. at 1814 (overruled by Thornburgh v. Abbott, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) as to the standard used in analyzing prison regulations and adopting the Turner standard).  "The conclusion that these rights are not absolute, however, does not give the defendants free rein to grant and deny visitation privileges at will."  Hamilton v. Saxbe, 428 F.Supp. 1101, 1112 (N.D. Ga. 1976).

It is also clear from Overton that inmates retain a limited First Amendment right to intimate association, although the right may be withdrawn for various reasons relevant to legitimate penological interests.  Overton, 539 U.S. at 131-32, 123 S.Ct. at 2167. The problem for Defendant Garcia in this case is that Plaintiff's complaint provides no basis to determine whether a legitimate penological interest existed for suspending

Plaintiff's visitation privileges.  Unlike the situation in <u>Overton</u> in which the suspension of visitation privileges was approved because the prisoner's conduct violated prison rules and was relevant to a legitimate interest, Plaintiff's complaint alleges that he did not violate a rule, was never charged with a disciplinary report, and never had an opportunity to be heard.

The withdrawal of an interest as important as visitation for an indefinite period of time must be accompanied by due process.  Prisoners "may not be deprived of life, liberty, or property without due process of law."  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 94 S.Ct. 2963 (1974), *citing* <u>Haines v. Kerner</u>, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); <u>Wilwording v. Swenson</u>, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); <u>Screws v. United States</u>, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).  It has been established for many years that an inmate's liberty interest must be safeguarded by at least a basic level of due process: a meaningful opportunity to be heard and notice of any adverse decision.  <u>Wilkinson v. Austin</u>, 545 U.S. 209, 229, 125 S.Ct. 2384, 2397 (2005), *citing* <u>Greenholtz v. Inmates of Neb. Penal and Correctional Complex</u>, 442 U.S. 1, 15, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); <u>Cleveland Bd. of Ed. v. Loudermill</u>, 470 U.S. 532, 543, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); <u>Fuentes v. Shevin</u>, 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (stating "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' " (quoting <u>Baldwin v. Hale</u>, 1 Wall. 223, 233, 17 L.Ed. 531 (1864)(other citations omitted)).  Proving an opportunity to be heard "reduces the possibility of an erroneous deprivation" or an arbitrary one.  <u>Wilkinson</u>, 545 U.S. at 226, 125 S.Ct. at

2396.  It should come as no surprise to a prison official that a minimum level of due process is required prior to infringing on a liberty interest, even a limited one.  On the facts as alleged in Plaintiff's second amended complaint, no process was provided and qualified immunity does not protect that decision.

It is true that similar cases have approved a decision to suspend a prisoner's visitation privileges.  *See, e.g.,* Caraballo-Sandoval, 35 F.3d at 525; Evans v. Johnson, 808 F.2d 1427, 1428 (11th Cir. 1987) (concluding that because prisoners have "no absolute constitutional right to visitation, such privilege being subject to the discretion of prison authorities, provided the visitation policies of the prison meet legitimate penological objectives.").  It is also true that prison officials have been granted qualified immunity in cases which challenged the suspension of visitation privileges.  *See* Blue v. Harris, No. 07-20837, 2008 WL 4186967, at *10 (S.D. Fla. Sept. 5, 2008) (upholding suspension of inmate's visitation privileges); Cotney v. Franklin, No. 2:03cv1181, 2005 WL 1514047, at *7-8  (M.D. Ala. June 24, 2005) (finding that "[b]ecause of the lack of clearly established law on the issue of freedom of association rights of pretrial detainees, it cannot be said that a reasonable jail administrator in Bowers' position would have had fair warning that not permitting Cotney to visit with his father would have violated Cotney's First Amendment rights.").  The distinction here, however, is that Plaintiff's privileges were suspended without notice, without having been charged with a rule violation, and without an opportunity to be heard.  That is a crucial distinction and one that precludes qualified immunity for Defendant Garcia.

**Requests for relief**

Plaintiff requested injunctive relief and nominal damages in an amount that Defendants claim is not nominal. The question of relief due to Plaintiff, should he be successful in this case, is not one that need be addressed at this stage of the litigation.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss, doc. 39, be **GRANTED in part and DENIED in part .** The motion to dismiss should be **GRANTED** as to Plaintiff's claims against Defendants Bannister and Stine because Plaintiff has failed to state a claim against them, but the motion should be otherwise **DENIED**. It is further **RECOMMENDED** that this case be **REMANDED** for further proceedings on Plaintiff's claim against Defendant Garcia.

**IN CHAMBERS** at Tallahassee, Florida, on October 31, 2012.


 S/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**